at all, oral argument not to exceed, 15 minutes for plaintiff, 15 minutes to be shared by defendants. Kyle McGuire for the appellant, you may proceed. Thank you, your honors. Police to court, I'd like to reserve five minutes for rebuttal, please. We're here today to appeal summary dismissal of plaintiff's 1983 claims against the officer that punched him and his Monell claims against the officer's employer, the City of Chattanooga. Myles Guptill checked himself into hospital to seek placement to be treated for some negative thoughts he was having. After patiently waiting for three hours, nurses were visiting with Mr. Guptill about an injection that had been ordered for Mr. Guptill to be administered. Mr. Guptill did not want to take the injection without further understanding its purpose and was conversing with the nurses about it. Officer Gunn was outside of Mr. Guptill's hospital room observing this interaction. A nurse acknowledged that Mr. Guptill was calm and not being combative. Another security guard and two large male nurses, all of whom were much larger than the 5 foot 6, 145 pound, 57 year old Mr. Guptill, who was my client. They all moved into the room to administer the injection. Can I ask you about the thrust of this case? We've seen the video and read the briefs. The key for this case seems to come down to whether it's clearly established that at the time, I hate to use the word resisting because that has a connotation, but at the time he was struggling with the nurses, it was clearly established the officer couldn't use force at that point. We've got this whole line of medical cases where people are committed and they say they can use force to administer medical care. The cases you cite are either unpublished or state cases and we've got to have a clearly established case from our circuit. I appreciate the question, your honor. Thank you for asking it. I do think that you get to the dirks of the issue with whether it's a clearly established right. The district court phrased the standard by stating, by moving it into the estate of heel analysis because the district court assumed the last part would be satisfied which is, was the person experiencing a medical emergency that rendered him incapable of making a rational decision under circumstances that posed an immediate threat of serious harm to himself or others. The district court just assumed that to be true. Couldn't the officer when he's called in, what can the officer assume? I get it from the medical personnel, but the doctor has ordered a shot. He's ordered a shot and the nurses are trying, they've explained it to him several times and now they've made a determination that they're going to give the shot to him. Can an officer assume at that point that it is a need, a doctor order, person who's been, I agree, turned himself in, did all the things you said at the beginning, but he has now been committed and the doctor says he needs it for safety reasons, to himself. Your honor, I don't think there's anything in the record that shows that the officer did know that. And I think there's a presumption that we are all in charge of our own medical care. No, but does the officer have to go read the medical records? He doesn't have access to the medical records. Right, so can't he, that's my question, can't he assume that at that point? When the nurses are trying to administer a shot to a person who's been committed, what can the officer assume and what case says he can't? That's been committed, but I don't think there's anything in the record that shows that Officer Gunn thought or knew that he had been committed. All the officer knew. Why would the officer be called to the room? Why is the officer there? The officer is at Erlanger is just his extra security. He wasn't called to the room. Now there was, he indicates that a Walden security guard, who is also just extra security for the emergency room, indicated to him that he should probably come over and observe what was going on, but he was unclear as to what exactly the Walden security guard told him. Right, but do you agree, for the district judge to analogize it to a state of Hill, at 1015, Ruland placed an emergency detention order on Mr. Guptill due, and then I'm quoting, due to potential danger of harm to self and others? There's nothing in the record that shows that Officer Gunn had any knowledge of that. But this case doesn't say the officer has to know that. What case do you have that says the officer has to know? Well, your honor, there's very few cases that analyze the estate of Hill factors in general. Most cases are analyzing it under Graham, the estate of Hill is so new that I don't think there's enough, there's any cases on point as to whether an officer knew or, I mean, the other cases, the estate of Hill and the Kai case, those were all very apparent that the person was experiencing a medical emergency. You all have seen the video and seen that this is a person who's sitting in a hospital room after he checked himself in and very calmly and acknowledged by the nurses as not being combative and sitting there calmly just saying, I don't want that shot, why do I have to take it? And the nurses even say, we know you're not being combative, you have to take it. Why the doctor ordered him to have to be taking this shot, we don't know. We haven't had an opportunity to depose that doctor. For all we know, it was just standard protocol that whenever someone comes in saying, hey, I've kind of got some negative thoughts, okay, you're under a certificate of need. And then that gets signed later. It had not even been signed at that point. So the emergency detention needs to be explored as to why that occurred to determine that he was, in fact, under a medical emergency. Because if he's not under a medical emergency, then the Graham test kicks back in. This is a summary judgment case, right? That's correct, Your Honor. Okay, so there's been a completion of discovery? Opposing counsel is saying yes. I don't know. But because Mr. Guptill, our position is that Mr. Guptill was not experiencing a medical emergency that made him a threat to himself or to others. And as he was not experiencing a medical emergency, then we have to decide whether or not someone has a constitutional right to not be punched in the face for simply just saying, I don't want that treatment. How do you attest that the doctor had, I mean, I don't know if that would be the hill I would die on if I were you, because the doctor said he was a harm to himself or others. And that's no different than any of the other cases. Your Honor, the document that's in the record does state that, but we have not heard from that doctor as to why that was stated or if it's just standard language that's in the written document or why that's in there. I would follow up on Judge Sipar's questions also, because there is a distinction, isn't there, between a constitutional violation and whether you meet the step that would entitle you to qualified immunity, right? I'm sorry? Isn't there, qualified immunity has a step that requires there to be precedent that establishes the impropriety. So even if we think or agree with you that this shouldn't have been done, we've still got to have authority that would have put a police officer on notice. And so what's your best authority for why the police officer would have known that he could not do what he did? Harson, it is standard knowledge. I believe the Supreme Court in the United States has that it would put it out of, the language is something to the effect of it makes it known to everyone knows that a person has the right to their own medical treatment and how they deny medical treatment if they don't want medical treatment. It's also known by other standards that, or other cases, that you cannot punch a person who does not pose a threat. And there are cases that we have that we have cited and that we cited them in the opening brief and then there's more cases on point. There are a number. I think you point to some good cases. The question is, are they published cases? Are they binding authority? Are they within our jurisdiction or the Supreme Court? It's a struggle because that's one of the steps that matters in a qualified immunity analysis. And I'm happy to answer your question if you want. Please, please do. So the Sixth Circuit has recognized there's a unique danger of strikes to the head. That was in Davenport v. Calzee. Granted, that was not a police officer striking the plaintiff, but yet I believe it was an individual striking. I hate to interrupt your answer, but isn't the, a more precise question, what precedent says that it is a constitutional violation? I think that some of the cases that you have cited to have to do with whether or not it's appropriate to take certain actions under different standards, but what we're trying to decide here is when it's a constitutional violation. So what clearly established law can you point to that says that this is a constitutional violation of the Fourth Amendment? There are cases outside of the Sixth Circuit that do just that. Now, the Sixth Circuit has said that it can look to cases outside of the Sixth Circuit in order to find the constitutional precedent. Not even clearly established. Our case in Bell says we can't. That's following Supreme Court precedent that's indicated it has to be clearly established to an officer, so they have to be able to read. They don't have to survey the nation and figure it out. The Supreme Court has said that you don't have to have an exact case on point. Wesby says the opposite. That's a Supreme Court case. I'm sorry, what was that? Wesby from the United States Supreme Court says you have to have, especially Fourth Amendment, you have to have similar facts and similar situations so that all but the plainly incompetent would be on reasonable notice. Your Honor, I... If you have one, go ahead and list it, and then what we can do is you'll have your rebuttal and can provide whatever cases you would like to at that point. I think that at that point, for everyone's sake, if I might just take my rebuttal. Sure, that would be fine. Thank you. Good afternoon. May it please the Court. My name is Logan Davis. On behalf of Appellee Officer Joel Gunn, I will be arguing for ten minutes, and then the City of Chattanooga's attorneys will be arguing for five minutes. This Court should affirm the District Court's decision for three reasons. The plaintiff cannot show that he possessed a clearly established right that Officer Gunn violated, the District Court properly found that qualified immunity was met and that Officer Gunn was entitled to qualified immunity, and the District Court did not err in weighing evidence in the summary judgment decision. Your Honors, this case is exactly why qualified immunity exists as an affirmative defense to shield officers in situations like this when they are not on notice, when there is no claim. I get what you're saying, but here's my problem, and maybe you can help me out. There's a difference between, you know, excessive force to me, it includes what I would call gratuitous force, and we've got an unpublished case that talks about this, so obviously it's not binding, but gratuitous force, I think everyone would agree, it's known to a reasonable officer that it's excessive. Here, you've got three male nurses, you've got someone who turns themselves in voluntarily after a really bad day, I think we all agree on that, and in the video I watched, it does not seem combative at all, like when you're talking about a state of the hill, the guy's punching, he's kicking, the officer finally has to tase him. Here, they're holding him, he kind of pulls away because he doesn't want the shot, and then the officer hits him in the face. Why isn't that gratuitous? And afterwards, if you keep watching the video, the nurse even says, you didn't need to do that. Right. Thank you, your honor. It is not gratuitous violence because of the context in which Officer Gunn was entering the room. He was told that he was needed, he was summoned to that room to deal with a combative patient. I think the fact that he was even summoned showed that these two male nurses could not gain compliance or control of the situation at hand. I think Officer Gunn initially attempted to aid the situation with merely his presence and statements, but what changed was the level of resistance, and specifically, the fact that specifically prompted the response by Officer Gunn was when the plaintiff grabbed Officer Gunn's hand and pulled towards him. Based on the number of people in the room, I think there is a reasonable, a reasonable officer could conclude that force is necessary in that state. Yes, and what kind of force? Isn't that the issue? This is, it has all the indications of a police officer treating it as if it were an arrest situation and a resisting individual who had committed a crime, but we're not in that situation. You know, if we're in a state of heel, we are talking about emergency situations. We're talking about some degree of force. What degree is reasonably necessary to ameliorate the immediate threat, and then three, whether the force was more than reasonably necessary, was excessive. Hitting somebody in the head with a fist or the open hand, however you designate that, is a pretty strong response to somebody who was, in fact, speaking reasonably when the officer stood in front of him, because this is not, this is not an arrest situation. You can see that, right? Absolutely, absolutely, Your Honor, and I think it's important to look at under the training standards that Officer Gunn was trained under, his, the use of force continuum that they used, the first step of use of force is officer presence, simply the officer being present. That clearly was not enough. What's the second step? Isn't it verbal command? Absolutely, absolutely. And did the officer engage in any verbal commands? Because I see the nurses talking to him, then the nurses seem to instigate the grabbing of him, and then I get the officer didn't do any of that, but then the, is there a verbal command from the officer? Did I miss that? I think, Your Honor, you're correct in that it's a fluid situation, it's a rapidly evolving situation, and this use of force continuum does not require officers to stair-step. They can respond with what, with the evolving situation that they're presented with. He is dialoguing with the plaintiff in terms of, he said, I believe he says, you've got to take the shot, man, in terms of talking to him in an effort to gain compliance. And I understand your concern in terms of the level of force. I do think it's important not to look at this case in a vacuum. It is a strike to the plaintiff, it is a single strike. It's a punch to the head. Yes, Your Honor, it is, it is. And it is a single strike, and I think that's important. I think it's important that it wasn't some sort of intermediate weapon or some sort of alternative use of force. I think a reasonable officer could conclude that force was necessary, and I think it's important to remember the confines in which the officer was faced in, in terms of it was a close space with other individuals. Can I ask you a factual question? I'm sorry. You mentioned that, at least from the defense's perspective, that Mr. Guptill grabbed Officer Gunn's arm, I think that you said. Did the plaintiffs concede that, or did the district court make that finding, that he grabbed? Because I've watched that video many times. Yes, yes, Your Honor, the district court did make that finding, that he pulled away. That he pulled away. No, but you said that he grabbed his wrist. That's what I'm focused on. Oh, oh, oh, I apologize, I apologize. I was conflating the two. But I believe the... Was there a finding of grabbing? Because that is different than if someone's holding you and you pull away, right? I don't believe that specific language is in the court's order, but I do believe that's in the video. That he grabs him before he slaps him? Yes, Your Honor, I do. I thought it was a reach-out, and either he... I thought it was like a hand-holding situation where he then tried to pull away. It was... I don't remember that that was initiated by the officer grabbing as much as it was that the officer had his hand over him, and then didn't he actually, didn't Mr. Guptill actually then pull away because his arm was twisted behind his back? Is that not the sequence of it? Yes, Your Honor, but there was... There was a connection, there's no question about it. There was a connection, and I believe the plaintiff did grab, according to deposition testimony of Officer Gunn, grab onto Officer Gunn. That is the situation that he is responding to. I guess what I'm struggling... I don't see how he can grab on. I'm watching it again for the 20th time. He's got... Both his arms are held by the nurses. Yeah, and I think that's probably what I'm struggling with the most. This is a room that has two big male nurses in it, and as soon as this officer strikes him, the male nurses say, you don't do that here. Leave the room. I mean, these are the people in the room who are seeing the situation, who see these situations all the time, and the first thing they say is, that was wrong. You don't do that here. Leave this room now. They had to repeat that a couple of times and made the officer leave, right? Yes. So tell me why a reasonable person, which I assume all those medical professionals were, were not correct in their assessment that this was excessive force? Well, Your Honor, I think it's important that the situation was not resolved, the fact that the officer was called in, and the fact that the officer is looking at the situation from a police officer perspective, which is fundamentally different than the nurse's perspective, based on his training and experience. That is the lens with which he is coming at it, and the... Haven't we explained that in medical emergency situations, there's a different test in the courts? Yes. Yes. Yes. So what's your best case for the notion that a reasonable officer on the scene, which that's what the case law says, a reasonable person on the scene, would have made the same decision to strike, punch, whatever term you want to use, a medical patient wearing a hospital gown who is substantially smaller than the other four men who are in the room attempting to give him medication? Well, Your Honor, what I would respond to that is, I think even if the court views this strike as excessive, the qualified immunity, it still applies to officers. I probably made my question too long, because the first part of my question was, what's your best case? That this was reasonable. A reasonable officer. Objectively reasonable. In terms of what we... I don't know that there's a factually identical case, but I do believe that the factual scenario shows that he was not on notice, and there is no case that he was... put him on notice that he was violating a... Yeah, I wasn't asking the clearly established part. I'm just wondering. I'm trying to... I'm not a police officer. So, deciding what is objectively reasonable under these circumstances. Maybe there's other cases where, yeah, this is consistent with the training. You punch a patient in this circumstance. I don't think there's a factually similar case. I believe my time is up, unless there are other questions. Further questions? No, thank you. I'll just ask that the court affirm the lower court's decision. Thank you. Mid-Police Court, I am Phil Knobla, the Chattanooga Bar here, and we are here representing the City of Chattanooga in this Monell decision that there were two separate decisions issued by the District Court Judge. One initial decision determining that there was an objectively reasonable determination or qualified immunity by the officer, and then the second case is whether there was any policy, custom, or practice that was resulting from the City in this case that would require the City to be liable under Monell. And Monell has been established for a number of years at this point in time, and in this particular case, we believe the judge was correct in his Monell decision in this matter because Mr. Guptill has not identified any specific policy or custom or practice that could result in liability for failure to train or failure to supervise or for a custom or tolerance of federal civil rights violations. That is the requirement, at least it's the responsibility of the City in connection with these matters, and the judge issued a very clear decision on that matter. We didn't get into the objective reasonableness too much because it was in the first opinion that he dealt with on behalf of the officer, but having made that determination, he did an in-depth review. What if we thought that determination was wrong, but there was no clearly established law? Then the City has still not got liability under Monell. If there's no clearly established liability or law for it to train its officers under this type of mental health type situation on the use of force. I believe the particular requirements that we have in the Police Department here are our use of force continuum policy, and that use of force continuum policy is in the record, is Admin 5 in the record. There's also specific training that is given regarding mental health constituents here, and I believe that's Ops 44. In this particular case, the District Judge looked at those and determined that he did not find that they were improperly drawn, that there was any issue of prior instances where there had been an issue involving a mental health patient that the Department should have changed their policies on. I believe that's the requirement regarding notice to the City in connection with this under Monell that would require them to establish something different. If it's not clearly established law, as the Court has already spoken here, then there can be no liability under Monell. We believe that there was a situation here that the moving party was entitled to judgment as a matter of law under this case. There is clear video evidence going back and forth on here. There was a lot of review of this case. It's not a situation where the City just simply looked at the matter and just ignored it by any means. This matter was reviewed at length by the policy makers for the City here, the Internal Affairs Department. There was quite a bit in the record about how IA reviewed this matter, made determinations that they were concerned about the use of force on the front end of it. We also had a, I guess, citizen review policy group here that also reviewed this matter, and they were evenly split on this matter as to whether there was a violation of policy or practice based upon, likewise, once again, reviewing the video that this Court has reviewed. There are also louder mill opportunities here for officers, and that's one reason that there had to be a determination of the group, and then a determination by the Police Chief eventually here on what his decision making was in this matter. And I believe his determination eventually was not sustained, but that was based upon a review of all the evidence back and forth on the policies, and the opportunity for the officer to explain his side of the story. So that's where we were on the front end of it here. Judge Collier? Just a practical question. He appeared in his police uniform, but he was actually moonlighting at the hospital, right? Yes. All right, so all of the officers who, moonlighting or in whatever circumstance, fall within your jurisdiction, and you train to that as well? No. If they're working for a second employer, that second employer would be training them on what would be involved in their job. In this case, the second employer, I think it was the city. Was he a sub of Walden? He was working as a security person for Erlanger Hospital for Walden Security at the time. So he was a contractor of the sub at the hospital. And the issue on use of force, I'm not trying to get away from that as well, because the use of force testimony, I believe, by Major Chambers, who is now our Police Chief in Chattanooga, is that whenever you're called to use force, you have to go in and use force based upon departmental policy. And in this determination, the question is whether that force was proper or improper here on the administration of force. Or acceptable to the hospital. Correct. Because then that becomes their choice. Yes. Right. Yes. And that is the city's position. I do not believe, there was some questioning about the, was it clearly established that an officer could not use force in the Sixth Circuit. Judge Collier, in this case, clearly referenced the Pegram versus Chandon case there in his ruling, and found that the facts of this matter were not similar to that particular case. And that was one of his bases for determining that it was appropriate. Okay. Any other questions? Thank you. Rebuttal. The answer to your question of, I believe it was you, Judge Thapar, what Supreme Court case doesn't require a specific case on point? And that case is Taylor versus Rojas, I believe I'm pronouncing it, Rio Rojas. The side is 141 Supreme Court 52. And that's a 2020 case. To Mr. Noblitt's point about the Pegram case not being similar and that that's what the district court distinguished from this case. The whole reason that the district court distinguished it was because they found that Mr. Guptill was experiencing a medical emergency. If he's not in a medical emergency, then Pegram is absolutely on point of an officer punching an individual. And that being. Pegram was also unpublished, right? That may be true, Your Honor. Inciting Taylor versus Rojas, is your point that even without any precedent whatsoever, an objectively reasonable officer would understand that you can't have a single strike to a patient who is resisting medication? Is that what, because I'm trying to figure out what you're saying here when you say that. I wouldn't say that it's not any precedent, but it doesn't have to be a case that's exactly like our scenario, our factual scenario here. It doesn't have to be a case where an individual checks himself into every single fact. What about the question Judge Davis just asked, which is a person resisting medical care? I believe the person has the right to deny medical care. I agree with that, but where it's compelled? We don't have a case. I could not find a case where there was a person who was rejecting medical treatment that had been supposedly compelled. We don't know that. We don't concede that. I get it, but you take it from an objective officer's perspective. And the objective officer, I don't believe that standard should apply to him because the objective officer wouldn't know that that existed. There was no reason for him to know that this shot had been ordered. I guess the problem with that is it's in a medical facility that one assumes he's received some training from, perhaps not enough, that would let him know that that was the certification of need room in the hospital, right? And that's possible, Your Honor, but that is not in the record. Well, in terms of what is in the record, we do know that Officer Gunn was standing at the door as the nurse was saying to Mr. Guptill, you need to take this shot because you're not able to make good decisions. He heard him say that, though, right? You're right. So that would go into what a reasonable officer would do, having taken in that scene and understanding what was going on, right? It's possible, Your Honor, but I think there's still a factual dispute as to whether or not a doctor would have ordered that. Well, the nurse wasn't giving him the shot on his own orders. He had to be going by a doctor's order, right? That's pretty much, lay people know that, right? Yes, Your Honor. As for the training, the city does allow their officers to work extra jobs, is how they phrase it. Some of those extra jobs are in a hospital setting, in an emergency room, where you're going to see patients come in who are having mental issues or other scenarios, where extra training for those scenarios would be excellent, but they don't do any of that type of training. They rely upon the original training that they got whenever they first came into the academy or first came into the department, and that's the extent of their training. So I do think that they have an issue with . . . You would assume that the private security forces don't train at all? Well, and they rely upon . . . In this case, it would have been Walden Security to do this training, but Walden Security is hiring them to be police officers, and they're assuming that they have the training to do what's right as a police officer. And then the city says, as soon as they move in to act, they are acting as a city of Chattanooga police officer in the course and scope of their employment with the city of Chattanooga. Can I ask you a question on your Monell claim? Is your Monell claim premised on training of the officer, or is it premised on ratification of his . . . It's more the ratification. Thank you, Judge Davis. It is the ratification. I see that my time is up, but if you all want me to answer that or talk about that, I'm happy to. I just wanted clarity there, so I don't have any follow-up on that. Thank you. All right. Thank you all. We thank you both for your arguments and your briefing and your help us with a case that is difficult to do.